## Case No. 11,265.

### POND et al. v. VERMONT VAL. R. CO. et al.

[12 Blatchf. 280.] [1]

Circuit Court, D. Vermont.    Aug. 27, 1874.

JURISDICTION—CITIZENSHIP OF PARTIES—EQUITY—JURISDICTION TO RESTRAIN MISUSE OF CORPORATE POWERS OR PROPERTY — DIRECTORS AS WRONG-DOERS—BILL BY STOCKHOLDERS.

1. Citizens of Connecticut, as stockholders in a Vermont railroad corporation, brought this suit to restrain the execution of a lease of the railroad of the corporation to another Vermont railroad corporation, alleging that the execution of such lease was contrary to the expressed will of a majority of the stockholders, and in disregard of the rights and interests of all who were stockholders, and a fraud upon such rights; that the persons threatening to make such lease were a former board of directors, holding over after their term of office had expired, and being in the actual possession of the seal, books, papers, and money of the corporation, and in the apparent control and management of its affairs, but who were, in fact, largely interested in such other railroad company, and were thereby induced to sacrifice the interests of the plaintiffs' corporation, and were, to that end, conspiring with such other company, in fraud of the stockholders in the plaintiffs' corporation, and in breach of trust; that, to perpetuate such apparent control, and effect the fraudulent purpose aforesaid, such former board of directors refused to call a meeting of stockholders for the annual election of directors, thereby exposing the company to a forfeiture of its charter; that, notwithstanding such refusal, the president did call a meeting, at which a new board of directors was chosen, but such former directors denied the validity of such election, retained the possession and management of the affairs of the corporation, and persisted in their determination to execute such lease; that the plaintiffs had called upon such new board of directors, and required them, by suit or otherwise, to prevent the execution of such lease, and prevent the transfer or wrongful disposition of the property threatened by such holding over board, and to themselves obtain possession: but that, although such new board concurred with the plaintiffs, and admitted that such lease would be a violation of the rights of the stockholders, they refused to take any such measures, by suit or otherwise, alleging that they so refused in consideration of the many obstacles in the way of obtaining such relief in the state courts.    The defendants were

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

the said former board of directors, (citizens of Vermont, Massachusetts, and New York,) the new board of directors, (citizens, also, of Vermont, Massachusetts, and New York,) and the corporation itself, with the other corporations embraced in the alleged conspiracy. The bill prayed for an injunction, and that such holding over directors be decreed to surrender the road and property to the corporation, or to a receiver, and give up the seal, books, papers, and money to the new board, or to a receiver, that a receiver be appointed, and for such other and further relief as to equity might appertain. To this bill one of the defendants pleaded to the jurisdiction of the court, that certain of the defendants were citizens of Vermont, and that their rights and interests were identical with those of the plaintiffs, and that they were made defendants for the purpose of giving this court a colorable and false jurisdiction, when, in truth, they were plaintiffs, aiding in the prosecution of the suit. Another defendant, after having answered the bill, made a motion, founded on affidavits, to dismiss the bill on the same grounds stated in the plea, and alleging that some of the defendants had conspired with the plaintiffs, for the fraudulent purpose of giving the court jurisdiction, and that the refusal of such new board of directors to bring suit was for the purpose of giving this court jurisdiction, and was a fraud upon the court. The court overruled the plea, and denied the motion.

2. A court of equity has jurisdiction, at the instance of stockholders in a corporation, to restrain the corporation and those who have the control and management thereof, from acts tending to the destruction of its franchises, from violations of the charter, from misuse or misappropriation of the corporate powers or property, and from other acts prejudicial to the stockholders, amounting to a breach of trust.

[Cited in Hardon v. Newton, Case No. 6,054.]

[Cited in Miner v. Belle Isle Ice Co. (Mich.) 53 N. W. 223.]

3. Such jurisdiction will be entertained notwithstanding the case may involve, as an incidental question, the inquiry which of two is the legal board of directors.

4. Where the board of directors are themselves the wrong-doers, or they refuse to prosecute, to restrain or redress the wrong, stockholders may file the bill.

[Cited in Hardon v. Newton, Case No. 6,054.]

[Cited in Davis v. Gemmell (Md.) 17 Atl. 265; Slattery v. St. Louis & N. O. Transp. Co., 91 Mo. 225, 4 S. W. 81.]

5. So, where one board, claiming to be directors, are the wrong-doers and the other board, claiming and alleged to be the legal directors, refuse to prosecute, stockholders may file the bill.

6. The plaintiffs cannot be defeated of their right to sue in the federal court by the fact that the members of such legal board of directors have, as stockholders, the same interest as the plaintiffs, or that they desire the success of the plaintiffs, nor by the fact that the refusal of the said legal board of directors was in order to drive the plaintiffs to bring the suit themselves, or even to enable the plaintiffs to bring their suit in the federal court.

7. The provisions of the judiciary act of 1789 [1 Stat. 73], giving the circuit courts jurisdiction where a suit is between a citizen of the state where the suit is brought and a citizen of another state, and declaring that no civil suit shall be brought therein against any inhabitant of the United States in any other district than that whereof he is an inhabitant, or in which he shall be found, do not forbid the exercise of jurisdiction where some of the defendants reside in the state in which the suit is brought, and other defendants, who appear and submit to the

jurisdiction, reside in other states. In such case, any supposed defect of jurisdiction relates not to jurisdiction of the action, but to jurisdiction of the person, and is waived by appearance.

[Cited in Kemna v. Brockhaus, 5 Fed. 764.]

8. Under the act of February 28, 1839 (5 Stat. 321, § 1), the jurisdiction of the circuit court in such case is clear.

9. Hence, it is not a good plea, by a defendant residing in Vermont, the state wherein the suit is brought by plaintiffs residing in Connecticut, that some of the defendants are citizens of New York and some of Massachusetts.

10. Where the bill of complaint, on its face, shows want of jurisdiction, the appropriate mode of raising the objection is by demurrer, though there are precedents for a summary motion to dismiss the bill on that ground.

[Cited in Romaine v. Union Ins. Co., 28 Fed. 637.]

11. But, where the bill shows apparent jurisdiction, and a defendant desires to contest its allegations, or show new matter in avoidance of that jurisdiction, he must do so by plea, and not by motion founded on affidavits; and, when such defendant has appeared and answered to the merits, such a motion will not be entertained.

12. On final hearing, the court will see to it that it does not exceed its jurisdiction, where want of jurisdiction of the action appears, but parties must conform to the ordinary modes of placing on the record the defences on which they rely, so that the court may pass upon the issues made by the record, and so that they may be the subject of review, should the record be sent to an appellate tribunal.

[This was a bill in equity by Charles M. Pond and others, survivors of William P. Burrall, against the Vermont Valley Railroad Company and others, to restrain the execution of a lease.]

Edwin W. Stoughton, for plaintiffs.

George F. Edmunds, for defendants.

WOODRUFF, Circuit Judge. The bill of complaint herein was filed by William P. Burrall (now lately deceased) and the other complainants, citizens and residents of the state of Connecticut, as stockholders in the Vermont Valley Railroad Company, a corporation created and organized by or under the laws of the state of Vermont. The bill seeks to restrain the execution of a lease of the railroad of the said corporation for twenty years from the 1st of June, 1875, to the Rutland Railroad Company, (also a defendant), and to cancel such lease, if any have been executed (as is claimed and pretended) by the officers, (Page, as president, and Williams, as treasurer,) of the said Vermont Valley Railroad Company, or persons claiming to be such officers, and acting as such in the management thereof. This relief is sought upon various grounds, especially, that such a lease is contrary to the expressed will of a majority of the stockholders; that it is in disregard of the rights and interests of all who are stockholders of that corporation only, and a fraud upon such rights; that the persons proposing and threatening to make such lease are former directors of the said corporation, claiming to

hold over after the expiration of the term of office for which they were elected. and, being in the actual possession of the seal, books, papers, and money of the corporation, and so having apparent control and management of its affairs, are, in fact, largely interested in the said Rutland Railroad Company, and officers thereof, and are thereby induced to sacrifice the interests of the Vermont Valley Railroad Company to those of the Rutland Railroad Company and of the Central Vermont Railroad Company, (another defendant,) with whom they are conspiring, to the prejudice of the stockholders of the Vermont Valley Railroad Company, to defeat their will and destroy their interests; and that so the acts of these pretended officers and directors are practically the transfer of valuable interests to themselves, in fraud of the stockholders last mentioned, and, so far as they can be deemed to have power to bind the Vermont Valley Railroad Company, in breach of trust. Their breach of trust is further alleged, in refusing to call a meeting of stockholders to elect directors, as by the charter they are bound to do, and thereby expose the corporation to a forfeiture of the charter under the laws of Vermont. Various other details are given in the bill, tending to show gross misconduct on the part of the defendants who are made such as directors or pretended directors of the said corporation, and whose acts are sought to be restrained. To show still further the illegality of the conduct of these defendants, former directors, and still acting as such, claiming to hold over, as before stated, and proposing and threatening to make the lease aforesaid, the bill also alleges, that, before the period arrived at which the annual meeting of directors of the said corporation should regularly be held, and while they were in office under their prior election. the said defendants, by formal vote, forbade their officers from calling a meeting of the stockholders without their express direction, and further voted, that the next annual meeting for the election of directors, which should regularly be held in June, 1873, should not be called until such day in December, 1873, as should be thereafter designated by them, and they thereafter designated no day for that purpose, thus defeating, or attempting to defeat, the right of stockholders to choose the directors and managers of their property, and perpetuate their own control of the affairs of the corporation, against the will of the stockholders, and with design to wrongfully and illegally execute the lease aforesaid of the property of the company, against the will and the interests of the stockholders of the corporation; and that, in an endeavor to defeat such mismanagement, a majority of the stockholders procured the president, notwithstanding the vote of such directors. to call a meeting of stockholders for an election of directors, which

meeting of stockholders was held, and a new board of directors was chosen at such meeting, but the said former directors deny the validity of such election, still retain possession and management of. the affairs of the corporation, and persist in their determination to execute such lease. Other particulars are stated in the bill, but this is probably sufficient to indicate the nature of the subject of complaint and grievance. The bill then alleges, that the new board of directors, whom the complainants aver to be the legal board of directors of the corporation, have been applied to by the complainants, and have been requested by them, by suit or otherwise, to prevent the execution of the said lease, and to procure the cancellation thereof, if any has been executed, and to prevent the transfer or other wrongful disposition of the road and property of the company, as threatened and intended by the said former directors so claiming to hold over as aforesaid, and to take measures, by suit, or otherwise, to recover possession of the said road and property, in accordance with the right of the said Vermont Valley Railroad Company thereto; but that, although the said newly elected board of directors concur with the complainants in their views, and admit that any such lease which may have been executed is invalid, and ought to be cancel-. led, and that the execution of a lease, as threatened and attempted, would be wrongful, and in violation of the legal rights of said Vermont Valley Railroad Company, and of the complainants and the other stockholders thereof, yet said board of directors, in violation of their duty as such, in answer to said requests of the complainants, wholly decline to act in accordance therewith, or with either of them. and say that, in consideration of the many obstacles in the way of obtaining, in the state courts, the relief aforesaid, they decline and refuse to take any further proceedings, by suit or otherwise, to protect the property of said company. or the interests of the stockholders thereof, from the wrongs and threatened wrongs in the said bill of complaint set forth. The prayer of the bill is, that the said pretended lease claimed to have been executed may, if in existence, be decreed to be given up and cancelled; and that the defendants Page, Butler, Chase, Prout, Williams, Slate, and the Vermont Valley Railroad Company be enjoined from executing, or causing to be executed, any lease of the said railroad, unless authorized by a legal vote of the stockholders; that the persons last named be required to surrender the property to the said railroad company or to a receiver, and give up the books, papers, common seal and money of the company, either to the said newly elected board of directors or to a receiver; and that a receiver be appointed, and for such other and further relief as to equity and good conscience may "obtain." The defendants to this bill, sought to be en-

joined as last mentioned, are members of the said former board of directors, alleged to illegally hold over in possession, and claiming and threatening as above stated, and are Peter Butler and George B. Chase, citizens of Massachusetts, and John B. Page, John Prout, James H. Williams and George Slate, citizens of Vermont. Gouverneur Morris, a citizen of New York, is also made a defendant, he being a member of both boards, and alleged to have dissented from the action and proposed action of such former board. The defendants who are alleged to constitute the said newly elected and legal directors, but who refuse to institute proceedings for the protection of the stockholders are Silas M. Waite, William H. Rockwell, Junior, Frederick A. Nash and Frederick Billings, citizens of the state of Vermont, and Daniel L. Harris, a citizen of the state of Massachusetts.

To this bill the defendant John Prout interposed a plea to the jurisdiction of the court. The averments therein are, that the defendants the Vermont Valley Railroad Company, and the defendants John B. Page, James H. Williams and George Slate, are citizens of Vermont; that Silas M. Waite, William H. Rockwell, Frederick A. Nash and Frederick Billings, named defendants, are also citizens of Vermont, and their respective rights and interests in the subject of controversy, and embraced in said bill, are identical with, and the same as, those of the said complainants, and they seek the same relief and decree in said proceedings as the said complainants, and were made defendants in said bill for the purpose of giving this court a colorable and false jurisdiction of said bill and the parties aforesaid, when, in truth and in fact, the said Waite, Rockwell, Nash and Billings, as well as said Morris and Harris, are complainants in said bill, and aiding in the prosecution thereof. This plea the complainants set down for argument, without any replication thereto, and they are, therefore, to be taken to admit all material and issuable facts stated therein.

The defendant John B. Page, after appearing and answering the bill of complaint, made a motion to dismiss the suit, upon the ground that this court has no jurisdiction, in substance repeating the plea of the defendant Prout, and alleging that some of the defendants conspired and confederated with the complainants for the fraudulent purpose of giving this court a false jurisdiction of said bill or cause, and that such last named defendants were made defendants for the purposes of jurisdiction, without reference to their real relation, as parties, to the said bill and the subject-matter thereof, and that the refusal of the so-called new board of directors to bring suit was only for the purpose of giving the court jurisdiction, and is a fraud upon the court. In support of this motion, the said Page examined witnesses, and their affidavits, claimed to establish these grounds of the motion, are produced.

The case was heard both upon the plea and upon the motion; and, on the argument, it was also urged, that the want of jurisdiction was apparent upon the face of the bill of complaint, inasmuch as it appears thereby, that some of the defendants are not citizens of the state in which the suit is brought, the defendants Butler, Chase and Harris being citizens of the state of Massachusetts, and the defendant Morris being a citizen of the state of New York.

It is not insisted, and cannot be successfully claimed, that the matters complained of herein are not of equity cognizance; or that a court having general jurisdiction in equity has no jurisdiction, at the instance of stockholders, to restrain a corporation, or those engaged in the control and management of its affairs, from acts tending to the destruction of its franchises, or violations of the charter, and from misuse or misappropriation of the corporate powers or property, or other acts prejudicial to the stockholders, amounting to a breach of trust on the part of the managers. Dodge v. Woolsey, 18 How. [59 U. S.] 331, and numerous cases cited in the opinion in that case; and see Bacon v. Robertson, 18 How. [59 U. S.] 480, 488; Smith v. Swormstedt, 16 How. [57 U. S.] 288. The questions here do not, therefore, pertain to the general jurisdiction of courts of equity, but to the question whether the jurisdiction of the circuit court of the United States is so limited, that, for other reasons than the nature of the controversy, it has no jurisdiction of this cause.

It is true, that counsel insisted, that the suit was, in part, at least, to determine which of two boards of directors of the Vermont Valley Railroad Company is the legally elected board of directors, and entitled to the management of its affairs. That, however, is not the object of the bill, it is not the relief prayed, and, although it may not be possible to do all that is prayed for, without incidentally considering that question, such consideration would only be incidental, and it is not even essential to the determination of the principal question, whether the defendants who constitute the former board of directors, and the two corporations who are made defendants, shall be permitted to carry out the alleged scheme to give a lease of the Vermont Valley Railroad for twenty years, under the circumstances alleged in the bill of complaint. To justify interference by stockholders by a suit to restrain a wrong threatened, or to obtain redress for the corporation, it is necessary that it should appear that the directors of the corporation are either themselves the wrong-doers, or that they refuse to prosecute for that purpose; and, in the last-named case, such averment involves refusal by the legal board of directors; and where, as in this case, one set of defendants are alleged to be in the commission of the wrong and there be another set who claim to be the legal directors, who, nevertheless,

refuse to prosecute for the redress or protection of the rights of the stockholders, the averment that the last-named are, in fact, the legal directors, does not, even if incidentally necessary, change the nature of the controversy. The wrong threatened or committed, and the prevention or redress of the wrong, are still the principal subjects of the controversy, and within the jurisdiction of a court of equity. I repeat, therefore. that the question here is, whether, for reasons other than the nature of the controversy, the jurisdiction of the circuit court of the United States does or does not embrace this case.

1. Is it fatal to the jurisdiction, that it appears on the face of the bill, that, while some of the defendants are citizens of the state of Vermont, others of them are citizens of the state of Massachusetts, and one a citizen of the state of New York?

Two clauses of the judiciary act of 1789 (1 Stat. 78, § 11) are relied upon to show that the circuit court has no jurisdiction of such a case, such jurisdiction being confined to cases in which jurisdiction is affirmatively conferred by statute—First, the clause which gives jurisdiction when "the suit is between a citizen of the state where the suit is brought and a citizen of another state;" and, second, the clause of the same section which declares, in substance, that no civil suit shall be brought against any inhabitant of the United States, in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of the service of the writ.

The question whether, where the suit was. in fact, against a citizen of the state in which the suit is brought, and by a citizen of another state, and for a matter properly cognizable by the circuit court, its jurisdiction of the action failed if a party having an interest in the subject, making him a necessary party, resided in still another state, was, under the act of 1789, one of much interest. Confessedly, the constitution of the United States did not require such a limitation of the jurisdiction. Cases might often arise in which it was of the utmost importance to citizens of one state to bring suit in the United States court in another state, where the matter in controversy arose, or the property or fund in question was situated, and where the principal defendants resided. When such a suit was brought against the defendants residing in the state where it was brought, was there a want of jurisdiction of the action itself, if it appeared that some other person, citizen of a third state, was a necessary party? I think not. The court might not be competent to make a decree in the absence of such party; but that would be not because the court was not competent to take jurisdiction of the action, but because it had not jurisdiction of all. the parties to the action which were necessary before the court could act upon the

subject in controversy. The two clauses in the act of 1789, read together, show precisely what congress intended. There must be a suit between a citizen of the state in which the suit is brought and a citizen of another state. If a citizen of a third state is a necessary party, you cannot compel his appearance by serving him with process, unless he is found in the district where the suit is pending, or unless he waives his privilege and voluntarily appears.. The supposed defect of jurisdiction in such case pertains to jurisdiction of the person, and not to jurisdiction of the action; and it is not for a citizen of Vermont, who is rightly proceeded against, to say, that the court has no jurisdiction of the action because another person, who is defendant with him, but who appears and answers to the merits without objection, resides in some other state. The object of the apparent limitation was not to prevent a citizen of Vermont, (properly sued in his own district,) from having a citizen of some other state joined with him as defendant; but, so far as defendants were included, it was to protect citizens from being sued out of the district in which they reside or are found to be served. It does not prevent their voluntarily appearing and submitting to the jurisdiction in such a case.

I am aware, that, in numerous cases cited by counsel on the argument, observations are made, by analogy, at least, in conflict with this view of the proper construction of the act of 1789. See Strawbridge v. Curtiss, 3 Cranch [7 U. S.] 267; New Orleans v. Winter, 1 Wheat. [14 U. S.] 91; Cameron v. McRoberts, 3 Wheat. [16 U. S.] 591; Conolly v. Taylor, 2 Pet. [27 U. S.] 564; Commercial & R. R. Bank v. Slocomb, 14 Pet. [39 U. S.] 60; Ohio & M. R. Co. v. Wheeler, 1 Black [66 U. S.] 286; Wood v. Davis, 18 How. [59 U. S.] 467; McDonald v. Smalley, 1 Pet. [26 U. S.] 620; Scott v. Sandford, 19 How. [60 U. S.] 393; Coal Co. v. Blatchford, 11 Wall. [78 U. S.] 172; Sewing Machine Co.'s Case, 18 Wall. [85 U. S.] 553. But no decision of the supreme court was cited, and I have found none, holding the precise point, that, when the suit is brought in one state where defendants therein reside, and another defendant living in another state appears and answers without objection, such first named defendants can object that the court has, on that ground, no jurisdiction. On the contrary, the view which I have given of the true construction of the act of 1789 is affirmed by Chief Justice Marshall, and acted upon by the supreme court of the United States, in Russell v. Clark's Ex'rs, 7 Cranch [11 U. S.] 69, where the complainant lived in South Carolina and brought suit in Rhode Island, in the circuit court of the United States, against citizens of Rhode Island. That court dismissed the bill. The supreme court held certain assignees or trustees. residing in the state of New York, necessary parties to the suit, but reversed the judgment of the circuit court.

and remanded the case, to give the complainants the benefit of the possible willingness of those assignees or trustees to come in as parties and waive their privilege, and give the court jurisdiction of their persons, which alone was deemed requisite to the complete jurisdiction of the court over the whole matter. "It is possible," says the opinion, "that they may consent to make themselves parties in this cause;" and the court reversed the decree and remanded the cause, with leave to the complainant to make them parties. The distinguished chief justice and his associates were not ignorant of the distinction between jurisdiction of the person and jurisdiction of the action, or of the rule that a party may waive objection to jurisdiction of his person, but that consent cannot confer jurisdiction of the action itself. The court would not have remanded that cause when the immediate and direct effect of making those citizens of New York defendants would be to defeat the jurisdiction of the court. That case, therefore, is a direct decision of the supreme court in support of the views above expressed.

But, whatever doubt may be supposed to arise on this point out of the observations found in other cases in some degree analogous, the construction given by the supreme court to the act of February 28, 1839 (5 Stat. 321, § 1), is conclusive in support of the jurisdiction of the court in such case. In Jones v. Andrews, 10 Wall. [77 U. S.] 327, the bill was filed by a citizen of Georgia, in the circuit court of the United States for West Tennessee, against citizens of Tennessee and a citizen of New York. The latter was not only a necessary party, but, in interest, he was the principal party to be affected by the relief sought. The circuit court dismissed the bill for want of jurisdiction, upon grounds like those urged in this case. The supreme court reversed the decree. In the opinion of the court, by Mr. Justice Bradley, it is said: "The act of February 28, 1839, by implication, confers jurisdiction over non-residents of the district where the suit is brought, if they voluntarily appear therein. The suit can proceed against them if they voluntarily appear, or without them if they are not necessary parties. * * * In this case, Andrews was a necessary party, and he was not a resident of the district, and was not served with process, but he did voluntarily appear. * * * After this, the question of jurisdiction over the person was at an end, and the decree of the circuit court, dismissing the bill for want of jurisdiction, must be reversed." This decision meets the precise point raised by the defendants Prout and Page, that, upon the face of the bill, the court has no jurisdiction, because some of the persons made defendants do not reside in the district of Vermont, and establishes, that, if the court has obtained, or shall obtain, due jurisdiction of their persons, the jurisdiction of the court cannot be questioned on the ground so objected. Some of these defendants have appeared and answered to the merits, and the other may do so, if he sees fit, if he has not already appeared.

2. I come, next, to consider the case upon the plea of the defendant Prout. No facts alleged in that plea show want of jurisdiction. Undoubtedly, material and issuable facts averred in a plea, when the complainant sets the case down for a hearing on the bill and plea, are to be taken as admitted. The facts averred in this plea are, that certain of the defendants are residents of the state in which the suit is brought; that their respective rights and interests in the subject of controversy embraced in the bill are identical, and the same as those of the complainants, and they seek the same relief and decree; and they were made defendants for the purpose of giving this court a colorable and false jurisdiction; and that, in fact, they are complainants in said bill, and aiding in the prosecution thereof. Divesting these averments of what is false, and inconsistent, in the terms used, with the plea itself, namely, that those defendants "seek the same relief." &c., and that those defendants "are, in fact, complainants," and giving to these loose and inconsistent averments their only proper meaning, the plea amounts to this—the defendants named have the same interest as the complainants, they wish that the relief sought may be granted, they are aiding in the prosecution of the suit, and they are made defendants for the purpose of giving the court jurisdiction. If, notwithstanding the facts stated, the court has jurisdiction, then it is to no useful purpose that the defendant Prout calls it, in the plea, false and colorable. The jurisdiction is real, if it exists.

The defendants named are made defendants not by reason of their interests in the railroad company as stockholders, but by reason of their alleged official character as directors, refusing to perform their duty by bringing suit to redress or prevent the wrong done or threatened. The plea in no wise denies such refusal, nor states any fact in avoidance of the right of a stockholder to prosecute where those whose duty it is to protect the corporation and its stockholders refuse; and, certainly, it cannot prevent or defeat the right of the complainants to sue, if it be true that such directors refused to bring suit in order to drive the complainants to bring suit themselves for their own protection, which, however, is not averred in the plea. If the grounds of jurisdiction exist, the motives which led thereto are not material. This is illustrated by the removal of a citizen from one state to another. If such apparent change of residence or citizenship is apparent only, and there has been, in fact, no change of residence, but only a transfer of apparent residence, animo revertendi, to give color of jurisdiction in a suit in the state of actual residence, it may not

avail; but, where there is an actual change of residence and citizenship before suit brought, the motive to such change is not material, even if it was a desire to give capacity to sue in the courts of the United States. So, also, those defendants, upon such refusal by them to prosecute, were necessarily made defendants. Without that, the complainants, as mere stockholders, could not sue at all in any court, for a cause of action arising out of such refusal. With that, the complainants have the right to sue in any court having jurisdiction. If they desired to come into the federal court, they had the right to do so, notwithstanding such recusant directors lived in Vermont; and they had no alternative but to make them defendants. Consistently with the fact standing undenied, that those defendants refused to be plaintiffs, the purpose to state the facts in their bill which should show jurisdiction in the federal court, and make them defendants, in order that such court should have jurisdiction of the action and of all necessary parties, is lawful and proper and in no wise defeats that jurisdiction; and, surely, the fact that the rights and interests of those defendants, as stockholders, are the same as the rights and interests of the complainants, does not affect the jurisdiction. As already suggested, they are not proceeded against as stockholders, nor are they made parties in respect of any interest they have as stockholders. The other defendants, who compose the alleged former board of directors, have also the same rights and interests, as stockholders, in the Vermont Valley Railroad Company and its management, as have the complainants, and so have all other stockholders in the company. All may not agree in their judgment of what is wise, best, or legal, and the interest of some may be overbalanced by their interest in other railroads, but, as stockholders of this company, all are, in fact, in the like interest. But this does not destroy the right of one or more of the stockholders, otherwise competent, to sue in the federal courts. Nor can the desire or wish of such other stockholders that the complainants may be successful, defeat such jurisdiction. The case of Dodge v. Woolsey, in the supreme court of the United States (18 How. [59 U. S.] 331), seems to me conclusive upon this aspect of the present case. There, as here, the directors refusing to sue resided in the same state with the other defendants. There, as here, those directors were of the same opinion with the complainant, that a wrong to the corporation had been done and was further threatened, and that the acts against which the complainant sought to protect the corporation were illegal. They, nevertheless, refused to sue, and their reason for refusal was identical with that here alleged, and neither in that case nor this did it appear that their refusal was not actual, or that they were not sincere in their reasons

therefor. The court, in that case, declare most fully the jurisdiction of the federal court, and show the necessity of such jurisdiction, notwithstanding it was, on the face of the bill, true, as is alleged in the plea in the present case, that the interests and wishes of those defendants were the same as the rights, interests and wishes of the complainant, and that such defendants were in full accord with the complainant, as a stockholder in the corporation. That case shows, also, that the complainant was not bound to make stockholders residing in the state in which the suit was brought parties, and, inferentially, that a purposed omission to make them parties, in order that the jurisdiction of the federal court might not be defeated, did not defeat the jurisdiction. The court say, of the right of the stockholder to sue in such cases: "Courts of equity have jurisdiction over corporations, at the instance of one or more of their members;" and of the particular case then before them, at the instance of a single stockholder, the complainant, Woolsey: "Besides, it was not his interest alone which would be affected by the result. Hundreds, citizens of the state of Ohio and citizens of other states, are concerned in the question." The suit being brought in Ohio, if the complainant had made such other stockholders parties defendant, upon allegations adapted to charge them, it would not have deprived the court of jurisdiction. His omission to make them parties at all did not defeat the jurisdiction; and, if it had been alleged and proved that the reason he did not join with them as complainants, was his purpose to give the federal court jurisdiction, the fact would have been wholly immaterial, because he had the right to prosecute the suit himself, without making them parties. So, here, the complainants had the right to prosecute; and, if making stockholders who reside in Vermont parties plaintiff with them would deprive them of access to the federal courts, they had a right to sue by themselves and for that precise reason. The fact that all other stockholders have the same interest, no more destroys the jurisdiction than it did in Dodge v. Woolsey. I am, therefore, of the opinion that nothing alleged in the plea of the defendant Prout defeats the jurisdiction of this court, and that such plea should, therefore, be held insufficient. The complainants are, therefore, entitled to a decree notwithstanding such plea.

3. As to the motion to dismiss the bill, which is made by the defendant Page. So far as it was urged upon grounds arising on the face of the bill itself, what is firstly above suggested is a sufficient answer to the motion. The motion further proceeds mainly upon the grounds stated in the plea of the defendant Prout, and these have been above secondly considered, and my conclusion is adverse to the motion. If the motion be disposed of upon the proofs submit-

ted in support of the grounds alleged therefor. I am constrained to say, that those proofs do not satisfactorily establish such collusion or conspiracy or attempted fraud on the jurisdiction, as was claimed on the argument. A bill ought not to be dismissed on such grounds without clear proof. The complainants may be remediless, when the directors do, in fact, refuse to sue, and such refusal is sincere, unless jurisdiction be entertained.

Besides, so far as the motion proceeds on the allegation of facts not appearing on the face of the bill, but sought to be brought to the attention of the court by a defendant who has submitted to the jurisdiction of the court by answering to the merits, the motion ought not to be entertained. Where it appears by the complainant's own showing in his bill, that the court has no jurisdiction of the action, a defendant served with process may demur to the bill on that ground, and there are precedents for a summary motion to dismiss the bill. In such case, the question arises on the record, and can be reviewed on an appeal or writ of error, bringing the record before an appellate tribunal. But, where the bill shows apparent jurisdiction, and a defendant desires to contest the allegations, or introduce new allegations in avoidance of the jurisdiction, it should be done by plea to the jurisdiction, which will bring upon the record the allegations and the finding of facts thereupon, and not by a collateral proceeding, forming no part of the record proper, and not regularly brought before the appellate tribunal by the appeal or writ of error.

This is not inconsistent with the principle, that, whenever, in the progress of the cause, it appears that the court have no jurisdiction thereof, and cannot make a valid decree, the court will decline to act in the premises. The modes of judicial proceeding prescribe in what manner such facts must be made to appear by a party urging the objection. As to him, if he does not raise the objection in a proper form, but appears and answers to the merits, he has no cause of complaint, that the court do not afterwards receive from him the suggestion in an informal and summary manner. The record should show the question by proper allegation and issue thereupon. No doubt, the court has power to protect itself against imposition and fraud. But, parties should place their defences on the record in a form adapted to show on what they rely, and in a form in which, on a review of the record, the appellate court may have the proceedings before it, without searching for collateral and incidental proceedings, called out-branches of the record. This is in conformity with the opinion of the supreme court in Wickliffe v. Owings, 17 How. [58 U. S.] 47, to the effect, that, when the averments in the bill show jurisdiction, the defendant, if he wish to deny it, must show want of jurisdiction

by plea controverting those averments; and, also, in harmony with the opinion of the supreme court, in Coal Co. v. Blatchford, 11 Wall. [78 U. S.] 172, to the same effect; and, in Jones v. League, 18 How. [59 U. S.] 81, the court hold, that, when the facts creating jurisdiction are disputed, the facts must be pleaded in abatement, and this must be done in the order of pleading, as at the common law. See, also, Wickwire v. State, 19 Conn. 477.

It follows, that the motion must be denied, with costs. Counsel will prepare the proper orders, overruling the plea of the defendant Prout, and denying the motion of the defendant Page, in conformity with this opinion.

[NOTE. On final hearing, the bill of Chase was dismissed, and a decree entered for Pond. Case No. 11,264.]